UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAKISHA E.,[1]<br><br>                    Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, *Acting Commissioner of Social Security*,[2]<br><br>                    Defendant. | Case No.: 23cv674-MSB<br><br>**ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

On April 14, 2023, Plaintiff Lakisha E. ("Plaintiff") filed a civil Complaint against Defendant Commissioner of Social Security (the "Commissioner") seeking judicial review of Defendant's denial of disability benefits under the Social Security Act.  (ECF No. 1.)  Based on all parties' consent (see ECF Nos. 4 and 6), this case is before the undersigned

---

[1] Pursuant to Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only their first name and last initial."

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  See Commissioner SSA, https://www.ssa.gov/agency/commissioner/ (last visited September 203, 2024).  Accordingly, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this lawsuit.  See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party").

1

as the presiding judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c).  Now pending before the Court is Plaintiff's request to reverse the decision of the Commissioner's unfavorable decision and remand for the correction of legal errors.  (ECF No. 12, hereinafter "Plaintiff's Brief").  The Court has carefully reviewed Plaintiff's Brief, the Commissioner's responsive brief ("Commissioner's Brief") [ECF No. 14], the Administrative Record ("AR") [ECF No. 8], and the Complaint [ECF No. 1].  For the reasons set forth below, the Court **ORDERS** that judgment be entered **REVERSING** the Commissioner's decision and **REMANDING** this matter for further administrative proceedings consistent with this Order.

## I.      PROCEDURAL HISTORY

On May 28, 2020, Plaintiff filed applications for supplemental security income under Title XVI of the Social Security Act, alleging disabilities beginning on January 1, 2015, which was later amended to begin on the application date.  (AR 37, 217-33.)  The Commissioner denied the application initially on July 8, 2020, and again upon reconsideration on December 17, 2020.  (AR 145-64.)  Plaintiff requested a hearing before an administrative law judge ("ALJ") on February 3, 2021.  (AR 165-67.)  On January 13, 2022, ALJ Eric V. Benham held an oral hearing during which Plaintiff was represented by counsel.  (AR 59-83.)  In a written decision dated March 17, 2022, ALJ Benham found that Plaintiff had not been under a disability since May 28, 2020, the date the application was filed.  (AR 34-58.)

On May 19, 2022, Plaintiff requested review of the ALJ's decision.  (AR 209-16.)  The Appeals Council denied Plaintiff's request for review on February 23, 2023, making ALJ Benham's decision the final decision of the Commissioner.  (AR 1-7); see also, 42 U.S.C. § 405(h).  Plaintiff timely filed the instant civil action.  (ECF No. 1.)

## II.     SUMMARY OF THE ALJ'S FINDINGS

The ALJ followed the Commissioner's five-step sequential evaluation process.  See 20 C.F.R. § 416.920.  At step one, the ALJ found Plaintiff had not engaged in substantial

gainful activity since the application date, May 28, 2020.[3] (AR 40.) At step two, the ALJ found that Plaintiff had the following severe impairments that significantly limit her ability to perform basic work activities: multiple sclerosis ("MS"), degenerative disc disease and lumbar spondylosis with radiculopathy, chronic pain syndrome, obesity, borderline intellectual functioning, depression, and anxiety. (Id.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the Commissioner's Listing of Impairments. (AR 41.)

Because the ALJ found Plaintiff's impairments did not amount to a listed impairment, the ALJ then assessed Plaintiff's residual functional capacity to perform work. (AR 44.) The ALJ determined that Plaintiff is limited to "occasional stooping, crouching, kneeling, crawling, or climbing stairs" but that "[s]he should do no climbing of ladders or scaffolds" and that she is limited to "simple work" and "should avoid work in environments that would expose her to concentrated cold, heat, or vibration." (Id.) Accordingly, the ALJ adduced that Plaintiff "has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) with standing and walking to two to four hours out of an eight-hour day and lifting ten pounds occasionally or frequently." (Id.)

At step four, the ALJ found that Plaintiff did not have past relevant work. (AR 52.) The ALJ adopted the finding contained in the final prior hearing decision. (Id.) At step five, the ALJ found that, after considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (AR 53.) These jobs include charge account clerk, table worker, and assembler. (Id.) As a result, the ALJ

---

[3] Plaintiff initially alleged disability beginning on January 1, 2015, but during the administrative hearing, she amended the onset date to May 28, 2020. (AR 37, 62.) Accordingly, the Court will use May 28, 2020, as the start of the alleged disability period.

determined that Plaintiff could make an adjustment to other work and, therefore, is not disabled. (Id.)

### III.     DISPUTED ISSUE

Plaintiff briefed one issue as grounds for reversal: whether the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's subjective symptom testimony.

### IV.     STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision. See 42 U.S.C § 405(g). The scope of judicial review is limited, and the denial of benefits will only be disturbed if it is not supported by substantial evidence or contains a legal error. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence" is a "'term of art' used throughout administrative law to describe how courts are to review agency factfinding." Biestek v. Berryhill, 587 U.S. 97, 102 (2019) (quoting T-Mobile South, LLC v. Roswell, 574 U.S. 293, 301 (2015)). The Supreme Court has said substantial evidence means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001). Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the case to the Social Security

Administration for further proceedings. Id. However, the reviewing court "may not reverse an ALJ's decision on account of an error that is harmless." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (quoting Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012)).

## V.   DISCUSSION

This Court finds that the ALJ did not properly consider Plaintiff's subjective symptom testimony. Plaintiff argues that the ALJ failed to articulate specific, clear, and convincing reasons for rejecting her subjective symptom testimony. (ECF No. 12 ("Mot.") at 7-8.) First, she contends that the ALJ did not cite to any specific medical evidence supporting the conclusion that Plaintiff's testimony about her symptoms were not credible. (Id.) According to her, the ALJ did not offer "legally sufficient rationale" and merely recited medical evidence without the required analysis of how it is incompatible with Plaintiff's testimony. (Id. at 9.) She contends that the ALJ's discussion of the objective medical evidence, alone, is not sufficient to reject her testimony. (Id.) Plaintiff also argues that the ALJ incorrectly described her treatment as conservative, which appeared to undermine her testimony. (Id. at 12.) Finally, Plaintiff argues that the ALJ erroneously isolated and mischaracterized her daily activities to reject her symptom testimony. (Id. at 14.)

The Commissioner argues that substantial evidence supports the ALJ's decision to discount Plaintiff's subjective symptom testimony. (ECF No. 14 ("Opp'n") at 2.) According to the Commissioner, the ALJ rejected Plaintiff's testimony for several legitimate reasons that Plaintiff does not challenge. (Id.) The Commissioner argues that the ALJ rejected Plaintiff's testimony because (1) the psychologist's findings of her self-reports were unreliable (id. at 4); (2) her symptoms improved (id.); (3) she declined recommended treatments (id. at 5); (4) her allegations regarding her attention span or mental capacity were inconsistent with the medical record (id. at 6-7); and (5) her daily activities were at odds with her alleged disabilities (id. at 7).

//

A. **<u>Applicable Law</u>**

The ALJ must follow a two-step analysis to determine whether a claimant's allegations regarding subjective pain or symptoms are credible.  See <u>Johnson v. Kijakazi</u>, No. 19-17359, 2022 WL 1553259, at *1 (9th Cir. May 17, 2022); <u>Vasquez v. Astrue</u>, 572 F.3d 586, 591 (9th Cir. 2009); <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035–36 (9th Cir. 2007).

First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged."  <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 (9th Cir. 2017) (quoting <u>Garrison v. Colvin</u>, 759 F.3d 995, 1014–15 (9th Cir. 2014)). The claimant is not required to show that an underlying impairment could reasonably be expected to cause the severity of the pain alleged, but only that it could have reasonably caused some degree of pain.  <u>Vasquez</u>, 572 F.3d at 591 (citing <u>Lingenfelter</u>, 504 F.3d at 1036).

Second, if the claimant meets the first step and there is no evidence of malingering, then the ALJ may reject the claimant's statements about the severity of his symptoms "only by offering specific, clear and convincing reasons for doing so." <u>Trevizo</u>, 871 F.3d at 678 (quoting <u>Garrison</u>, 759 F.3d at 1014–15).  "The clear and convincing standard is the most demanding required in Social Security cases."  <u>Revels v. Berryhill</u>, 874 F.3d 648, 655 (9th Cir. 2017) (quoting <u>Garrison</u>, 759 F.3d at 1014–15). General findings are insufficient, and the ALJ must identify which specific pain and symptom statements are being discounted and what evidence undermines those claims. See <u>Lambert v. Saul</u>, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing <u>Treichler v. Comm'r Soc. Sec. Admin.</u>, 775 F.3d 1090, 1102 (9th Cir. 2014)); <u>Burch v. Barnhart</u>, 400 F.3d 676, 680 (9th Cir. 2005).  An ALJ's failure to identify specific statements and explain why they are not credible constitutes reversible error because the reviewing court cannot determine if the ALJ's decision was supported by substantial evidence.  See <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 489 (9th Cir. 2015); <u>see also</u> SSR 16-3p.

"[B]ecause symptoms, such as pain, are subjective and difficult to quantify," the ALJ will consider "all of the evidence presented," including information about the claimant's prior work record, statements about their symptoms, evidence submitted by their medical sources, and observations by the Agency's employees and other persons. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p. In addition to objective medical evidence, other factors that the ALJ will consider include Plaintiff's daily activities; the location, duration, frequency, and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; treatment; and any other measures used to relieve pain. See id. The ALJ may also consider inconsistencies between Plaintiff's statements regarding pain and the medical evidence. See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 16-3p.

### B. Plaintiff's Testimony

During the administrative hearing, Plaintiff testified that she has not been able to work because of her back and mental confusion. (AR 65.) Plaintiff's MS was getting progressively worse and seemed to be the source of her mental confusion. (AR 66.) Furthermore, her MS was causing muscle weakness and fatigue. (Id.) Although the medication she takes for her condition improves her symptoms, she still has relapses where she must go to the hospital for a few days. (Id.) She testified that she has relapses that occur about every six months but that she sometimes cannot go to the hospital because she cannot get out of bed. (AR 67-68.)

Plaintiff also testified that, at her best, she can pick up about ten pounds and stand on her feet for about ten minutes until her legs start to buckle and hurt. (AR 68-69.) She also has trouble sitting because of her back, so she normally naps and lays down about 30 minutes every day. (AR 69.) When her symptoms are bad, Plaintiff spends most of the day in bed. (AR 70.) She also complained of incontinence issues. (Id.) She says that her MS is getting worse because there has been an increase of lesions in her brain and spine. (Id.)

In addition to the physical symptoms, Plaintiff testified that the MS affects her mental health. (AR 71-73.) The MS causes her to become confused and have memory loss and slurred speech. (AR 71-72.) As a result of the MS, she also stated that she suffers from depression. (AR 73.) Aside from the symptoms she faces due to her MS, Plaintiff has carpal tunnel syndrome, which causes her hands to go numb and negatively affects her ability to stand or sit for long periods of time. (Id.)

### C. The ALJ's Findings

In the ALJ's decision, the ALJ summarized claimant's testimony:

> She cannot work because she has multiple sclerosis, and she experiences weakness, fatigue, and mental confusion. She receives injections for multiple sclerosis. She has a relapse in her multiple sclerosis about every six months, and then she improves with treatment. She still has problems with pain in her arms, hands, and legs even when she is not in a relapse. When she is not in a relapse, she can pick up less than ten pounds. She can stand for ten minutes, and then her legs buckle. She has trouble sitting due to pressure on her back. She lies down for 30 minutes during the day, and on a bad day she lies down all day. She has had multiple sclerosis since 2011, and it has progressed with more lesions since then. When she is in a relapse, she has more cognitive problems. Her cognitive problems include confusion, slurred speech, memory loss, and fatigue. She has numbness in her hands, and she will drop a cup of coffee because her hands go numb. She cannot do seated work because she has back pain when she sits for too long, and she needs to lie down during the day. She uses a walker prescribed by a physical therapist. When she has a flare of her multiple sclerosis, it lasts until she gets treatment with steroids.

(AR 44-45.) After summarizing Plaintiff's subjective testimony of her symptoms, the ALJ found that Plaintiff's limitations included her MS, degenerative disc disease and lumbar spondylosis with radiculopathy, chronic pain syndrome, obesity, borderline intellectual functioning, depression, and anxiety, but he also determined that those limitations were "not disabling." (AR 45.) Although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" her statements regarding "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence . . . ." (AR 48.)

The ALJ then found that "medical evidence and other evidence [do] not support allegations of disabling symptoms and limitations." (AR 48.) The ALJ cited the following facts that contradict Plaintiff's physical functioning allegations:

> [T]he medical record shows only brief treatment with steroids for a multiple sclerosis flare in May 2021 and does not otherwise describe flares of her multiple sclerosis within the relevant period. The claimant walked into the room without assistance of a walking device during her September 2020 consultative examination with Dr. Pasek (Ex. C10F at 3), and during her December 2020 consultative physical examination, the claimant denied currently using an assistive device for ambulation, her gait was normal, straight leg raising was negative, and her motor strength, sensation, and reflexes were intact in her lower extremities (Ex. C13F at 2-3.7). The claimant also had full strength at a level of five out of five in her upper extremities with grossly normal range of motion and negative Tinel's and Phalen's tests (Ex. C13F at 6). The claimant's July 2021 physical therapy evaluation indicated that her examination findings in active range of motion and manual muscle testing were within functional limits and her sensation in her upper and lower extremities was intact (Ex. C15F at 654). In addition, the claimant described going for walks without mention of an assistive device for ambulation in her treatment records (Ex. C12F at 25, 130-131). Though the claimant received gait training with a rollator assistive device, this was not supported based upon objective physical examination findings (Ex. C15F at 654) and appears to have been based upon subjective complaints. Therefore, the undersigned finds that an assistive device is not medically necessary for ambulation. The medical record also does not show that the claimant followed up for additional physical therapy or for pain psychology for pain management as recommended by her treatment providers.

(Id.) For Plaintiff's mental functioning, the ALJ observed the following:

> [T]he medical record shows that the claimant's treatment for depression and anxiety has been routine and conservative with medication management, and the claimant reported some improvement with this treatment (Exs. C3F at 4, C12F at 25). During her consultative psychological examination, the claimant was oriented to person, place, time, and purpose of the examination, her speech was normal, her mood was euthymic and within normal limits, and her affect was congruent to the situation (Ex. C10F at 5). The claimant was coherent during the interview, and her thought processes appeared to be organized and unimpaired (Ex. C10F at 5-6). The claimant's memory was mildly impaired, but she appeared to give "questionable effort" with "evidence of confabulation" (Ex. C10F at 6). The claimant's attention span did not appear to be impaired (Ex. C10F at 6). The claimant was able to respond appropriately to imaginary situations requiring

> insight, judgment, and knowledge of norms (Ex. C10F at 6).  Though the claimant obtained a full-scale IQ score of 59 in intelligence testing, Dr. Pasek noted that this score should be taken with caution due to the claimant's "inconsistent and questionable efforts" and instead concluded that based on observations and test results, the claimant's overall cognitive ability was likely borderline (Ex. C10F at 7-9).  The medical claimant also did not require emergency room or inpatient mental health treatment within the relevant period.

(AR 48-49.)  The ALJ further observed that "the claimant's activities of daily living within the relevant period do not support allegations of disabling symptoms and limitations." (AR 49.)

> The claimant reported playing games on her phone and playing with her dog in June 2020 (Ex. C3F at 4).  In July 2020, the claimant reported that she lives alone in an apartment, she drives, she goes shopping in stores, she can pay bills, count change, handle a savings account, and use a checkbook/money order, and her hobbies and interests include watching television, reading, and phone games (Ex. C4E at 4-8).  The claimant also described playing video games, coloring, reading scripture daily, and occasionally going for walks in August 2020 (Ex. C12F at 25), and she reported that she was going for walks as well as playing video games and doing more reading in September 2020 (Ex. C12F at 130-131).  In addition, during her September 2020 consultative examination, the claimant reported that [she] was able to drive, she reported no difficulty completing household tasks, she reported that she was able to pay bills, handle cash appropriately, and go out alone, she reported no difficulty making decisions, and she reported that she enjoyed watching television (Ex. C10F at 5)."

(Id.) The ALJ then went on to examine medical opinions and prior administrative findings of several doctors without referencing Plaintiff's subjective symptom testimony. (AR 49-52.)  After this analysis, the ALJ found that "evidence of changed circumstances support[] a greater level of limitation in the claimant's residual functional capacity."  (AR 52.)

D. **Analysis**

The two-step analysis determines whether the ALJ properly challenged Plaintiff's subjective symptom testimony.  See Johnson, 2022 WL 1553259, at *1; Lingenfelter, 504 F.3d at 1035.  Because the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" (AR 48),

step one is satisfied.  Trevizo, 871 F.3d at 678.  Accordingly, the ALJ may reject Plaintiff's testimony about the severity of her symptoms only by providing "specific, clear, and convincing" reasons.  See Brown-Hunter, 806 F.3d at 488–89; see also Leza v. Kijakazi, No. 21-16079, 2022 WL 819782, at *2 (9th. Cir. Mar. 17, 2022).  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  General findings are insufficient; the ALJ "must state which pain [or other symptom] testimony is not credible and what evidence suggests the complaints are not credible."  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (citing Varney v. Sec'y of Health & Human Servs., 846 F.2d 581, 584 (9th Cir. 1988)).  Here, the ALJ failed to meet the "demanding" clear and convincing standard.  Revels, 874 F.3d at 655.

**1. Identifying testimony and evidence**

First, the Commissioner argues that Plaintiff "has not challenged the bulk of the ALJ's rationale" but fails to rebut Plaintiff's main argument, which contends that the ALJ failed to specify the testimony and reasons why Plaintiff's testimony was discredited.  (Compare Opp'n at 2 with Mot. at 9-11.)  This is a fatal flaw.

The ALJ needs to "specifically identify" the parts of Plaintiff's testimony that were not credible and explain why.  Holohan, 246 F.3d at 1208; see also Brown-Hunter, 806 F.3d at 494 ("We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [Plaintiff's] testimony where, as here, the ALJ never identified which testimony she found credible, and never explained which evidence contradicted that testimony").

As described above, the ALJ gave a summary of Plaintiff's subjective symptom testimony.  Instead of specifically identifying the discredited testimony, the ALJ only made a general conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR 44, 48).  The Ninth Circuit has held that this boilerplate language does

not rise to the level of "specific, clear, and convincing" reasons for discounting a claimant's subjective testimony.  See, e.g., Treichler, 775 F.3d at 1103 (holding that a boilerplate introductory sentence falls short of "meeting the ALJ's responsibility" to discuss the objective evidence); Vasquez, 572 F.3d at 592 (finding that the "vague allegation that [Plaintiff's claims] were 'not consistent with the objective medical evidence'" was inadequate to reject Plaintiff's subjective testimony).  Although the ALJ does not have to perform a "line-by-line exegesis of the claimant's testimony," the ALJ must offer more than a non-specific conclusion that the testimony was inconsistent with medical treatment.  Lambert, 980 F.3d at 1277.  Here, the ALJ's summary is more than a generalized statement, but it is not specific enough for the Court to adequately analyze and determine if substantial evidence supports his determination.

      The ALJ's failure to identify the testimony with specificity is an issue because the ALJ also did not connect specific medical evidence to Plaintiff's testimony; instead, he provided a general summary of the medical record and stated his conclusion.  (AR 48-49.)  "[S]imply reciting the medical evidence in support of [a] residual functional capacity determination" does not meet the "clear and convincing" standard for rejecting a claimant's testimony.  Brown-Hunter, 806 F.3d at 489; see also Lambert, 980 F.3d at 1278 (holding that a "relatively detailed overview of [the claimant's] medical history" was not the same as providing clear and convincing reasons for discounting the claimant's testimony).  Although the ALJ separates the testimony between physical and mental functioning, the ALJ only summarizes Plaintiff's medical records and does not make connections to specific portions of Plaintiff's testimony.  (AR 48-49.)  While it may be possible to draw inferences about what testimony is inconsistent, it is the duty of the ALJ to identify those inconsistencies with specificity.  Lambert, 980 F.3d at 1278 (citing Brown-Hunter, 806 F.3d at 494) ("Although the inconsistencies identified by the district court could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make," and the reviewing court is "constrained to review the reasons the ALJ asserts.").

Tellingly, Defendant's opposition does not cite a specific portion of the ALJ's decision that explicitly explains what testimony was rejected and why. (Opp'n at 3-8.) Instead, Defendant cites other parts of the AR to support the ALJ's sparse explanation. (Id.) Similar to the district court in Lambert, the Commissioner's attempts to fill in the ALJ's reasoning by citing portions of the record is improper. Lambert, 980 F.3d at 1278.

For example, Defendant states that "the ALJ explained that the record did 'not show sustained treatment for carpal tunnel syndrome to indicate that this causes more than minimal ongoing functional limitations.'" (Opp'n at 3-4 (citing AR 40).) However, no actual analysis was done to compare Plaintiff's "claims of disabling symptoms from her carpal tunnel syndrome" because the ALJ simply does not acknowledge her testimony at all.[4] (Id.; see also, AR 40.) The ALJ must explicitly make connections between the testimony rejected and the medical evidence instead of leaving the Court to make inferences. See Brown-Hunter, 806 F.3d at 494 ("providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons"). As Plaintiff rightfully points out, this Court can only review the ALJ's decision on its face and cannot consider the Commissioner's post hoc explanations for unexplained conclusions. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (finding that the district court erred in affirming the ALJ's credibility decision regarding the plaintiff's subjective symptom testimony "based on evidence that the ALJ did not discuss"); see also, Lambert, 980 F.3d at 1278.

The Court finds that the ALJ failed to specifically identify testimony that he believed was discredited and adequately explain how such testimony was inconsistent with the record. Thus, the Court cannot assess whether the ALJ provided specific, clear,

---

[4] Indeed, even if the ALJ made that connection, the lack of objective medical evidence is not enough to discredit a claimant's symptom testimony. See e.g., Bunnell v. Sullivan, 947 F.2d 345, 946-47 (9th Cir. 1991) (holding that "the adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence").

and convincing reasons for rejecting Plaintiff's testimony because, as illustrated below, the ALJ's lack of specificity forces the Court to make inferences. Brown-Hunter, 806 F.3d at 494; see also Juanita R. v. Kijakazi, No. 21cv1296-MDD, 2022 WL 17345782, at *4 (S.D. Cal. Nov. 30, 2022). This failure constitutes as a harmful error. See Brown-Hunter, 806 F.3d at 489.

### 2. Daily activities

Plaintiff argues that the ALJ mischaracterized and erroneously isolated her daily activities. (Mot. at 14.) On the other hand, the Commissioner claims that the ALJ noted Plaintiff's daily activities were at odds with her subjective symptom testimony. (Opp'n at 7.) Daily activities may be used to discredit an individual's testimony about the severity of her symptoms if: (1) the activities contradict the individual's other testimony, or (2) the activities meet the threshold for transferable work skills. Orn v. Astrue, 495 F. 3d 625, 639 (9th Cir. 2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

The ALJ must make connections between the rejected testimony and contradictory daily activities. See Lambert, 980 F.3d at 1278 (rejecting district court's attempt "to fill in the ALJ's reasoning" by citing evidence of claimant's daily activities). Although the ALJ states that "claimant's activities of daily living . . . do not support allegations of disabling symptoms and limitations[,]" he does not explain what specific testimony is undermined. (AR 49.) Thus, the Court agrees with Plaintiff that the issue of Plaintiff's daily activities is not properly before the Court. (Mot. at 13); See Brown-Hunter, 806 F.3d 487, 492 (9th Cir. 2015) (the district court is "constrained to review the reasons the ALJ asserts") (quoting Connett, 340 F.3d at 874).

Again, the Commissioner attempts to fill in the ALJ's reasoning by linking Plaintiff's daily activities and her testimony. (Opp'n at 7.) However, even if the ALJ had articulated Plaintiff's daily activities as a reason to reject specific parts of her testimony, the Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be

disabled." Vertigan v. Halter, 260 F. 3d 1044, 1050 (9th Cir. 2001) (quoting Fair, 885 F.2d at 603.)  Further, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted).

  Here, the ALJ lists how Plaintiff is able to play video games and games on her phone, play with her dog, live alone, drive, shop, pay bills, count change, handle a savings account, use a checkbook, watch television, read, color, and go for walks. (AR 49.)  First, even when comparing Plaintiff's activities with the ALJ's summary of Plaintiff's testimony, they do not appear to be contradictory.  Plaintiff's activities do not contradict her testimony that she has an MS relapse every six months, that she can pick up less than ten pounds, that her legs buckle when she stands for ten minutes, that she has trouble sitting due to pressure on her back, that she may lay down all day when her symptoms are bad, that she has numbness in her hands, or that she needs to lie down for at least 30 minutes during the day. (AR 45.)  These symptoms very well could coincide with her daily activities.  Nor do those activities necessarily contradict her testimony that, while in relapse, she has "cognitive problems [that] include confusion, slurred speech, memory loss, and fatigue." (Id.)

  Second, Plaintiff's daily activities are not necessarily transferable to the work setting.  In Vertigan, the Court determined an ALJ erred by discrediting a claimant's pain allegations because she could "go grocery shopping with assistance, walk approximately an hour in the malls, get together with her friends," among other activities. Vertigan, 260 F.3d at 1050.  Similarly, in this case Plaintiff's daily activities are "not necessarily transferable to the work setting" and are not dispositive of her ability to work eight hours a day, five days a week.  Id.

  Accordingly, Plaintiff's daily activities do not constitute substantial evidence that support the ALJ's decision to discredit her testimony.

//
//

### 3. Plaintiff's medical treatment

Plaintiff also argues that the ALJ erroneously characterized her treatment as "conservative." (Mot. at 12.) The ALJ references conservative treatment in lieu of Plaintiff's chronic myeloid leukemia in extended remission, carpal tunnel syndrome, gastritis, overactive bladder, herpes, psychotic disorder, and polysubstance abuse disorder, as well as treatment for her depression and anxiety. (AR 40, 43, 48, 50, 51.) Plaintiff critiques the ALJ's characterization of her treatment because she underwent epidural injections and she takes hydrocodone for pain. However, the ALJ does not reference conservative treatment as a reason to discount Plaintiff's testimony regarding her physical functioning. (See AR 48.) The ALJ only references conservative treatment when discussing her mental functioning. (Id.) Accordingly, the ALJ does not describe Plaintiff's epidural injections or narcotic medication as "conservative."

The Commissioner does not argue that Plaintiff's "conservative treatment" supported the ALJ's credibility finding, but instead argues that treatments improved Plaintiff's symptoms. (Opp'n at 4-5.) The ALJ does not attribute improvement with treatment as a reason to discount Plaintiff's allegations related to her physical functioning, only to her mental functioning. (AR 48.) But again, the ALJ only challenged Plaintiff's alleged "confusion, slurred speech, memory loss, and fatigue" while in relapse, which seems unrelated to claimant's treatment for depression and anxiety. (AR 45.)

The Commissioner also argues that Plaintiff "declined recommended treatments, which further undermined her extreme claims." (Opp'n at 5.) The ALJ points out that Plaintiff did not "follow[] up for additional physical therapy or for pain psychology for pain management as recommended by her treatment providers." (AR 48.) While this certainly may undermine the degree of pain Plaintiff alleged, the ALJ did not make clear what degree of pain was discredited. (Id.) Additionally, the ALJ is required to consider whether Plaintiff had an acceptable reason for failing to follow prescribed treatment,

including whether her mental illness affected her ability to follow treatment. See Pate-Fires v. Astrue, 564 F.3d 935, 945 (8th Cir. 2009). The ALJ did not do that here.

### 4. Plaintiff's mental functioning

The Commissioner argues that the ALJ properly discredited Plaintiff's allegations regarding her mental limitations. (Opp'n 6-7.) However, the ALJ only acknowledges Plaintiff's testimony regarding her cognitive problems when she is relapsing from her MS treatment, which "include confusion, slurred speech, memory loss, and fatigue." (AR 45.) This statement is not specific enough to determine whether the ALJ arbitrarily discredited her symptom testimony. Bunnell, 947 F.3d at 345. The ALJ does not mention any of Plaintiff's testimony regarding her attention span but only concludes that the medical records do not support that it is impaired. (See AR 42, 43, 46, 49, 52.) While the ALJ notes Dr. Pasek's finding of confabulation and Plaintiff's own recanting of her hallucinations, the ALJ does not make his own finding that Plaintiff's credibility was questionable. (AR 42, 46.)

Furthermore, although the ALJ discusses seemingly contradictory medical evidence by Dr. Pasek, there is no indication that the examination was done while Plaintiff was in relapse. (See AR 895-902.) Thus, Dr. Pasek's report does not conflict with Plaintiff's testimony that she suffers from confusion, slurred speech, memory loss, and fatigue while she is in relapse. The absence of medical evidence is not enough to discredit Plaintiff's testimony. See e.g., Bunnell, 947 F.2d at 346–347. Accordingly, the Commissioner does not provide clear and convincing evidence to discredit Plaintiff's testimony regarding her mental functioning.

### VI.   CONCLUSION

The ALJ failed to specifically identify which of Plaintiff's statements he found not credible, or which medical evidence contradicted that testimony. Holohan, 246 F.3d at 1208. For this reason alone, the Court may reverse and remand. Nevertheless, the Court also inferred and assessed the ALJ's purported reasons for discounting Plaintiff's testimony and finds that they are also not "specific, clear, and convincing reasons."

Brown-Hunter, 806 F.3d at 494.  The ALJ's failure to provide clear and convincing reasons for discounting Plaintiff's pain testimony was not harmless because it "precludes us from conducting a meaningful review."  Id. at 489; see also Michael Louis W. v. Kijakazi, No. 20cv2277-LL (MSB), 2022 WL 2701988, at *10 (S.D. Cal. July 12, 2022) (finding harmful error where the ALJ failed to specify which of Plaintiff's statements regarding pain and physical dysfunction he discredited).  On remand, the ALJ should reevaluate Plaintiff's symptom testimony and specifically identify which portions of it, if any, the ALJ finds not credible and why.

    The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the case to the Social Security Administration for further proceedings.  Id.

    The Court finds that remand for further proceedings is warranted because additional administrative proceedings could remedy the defects in the ALJ's decision.  See Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  Therefore, the Court **ORDERS** that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

    **IT IS SO ORDERED.**

Dated:  September 24, 2024

_____
Honorable Michael S. Berg
United States Magistrate Judge